**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION**

| | | |
|---|---|---|
| | § | |
| **STANLEY W. LONG,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:05-CV-0070-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed October 5, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint ("Pl. Brief") on May 8, 2006, Defendant filed her brief on June 6, 2006, and Plaintiff filed his reply on June 21, 2006.  The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.  This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on November 12, 2002, with a protective filing date of October 4, 2002, for his SSI application, alleging disability beginning October 30, 2002.  Tr. 14. Plaintiff's applications were denied initially and upon reconsideration. Tr. 34-37, 39-45.  Plaintiff filed a Request for Hearing by Administrative Law Judge on May 8, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on April 28, 2004.  Tr. 14, 33, 206-37. Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 209-36.  The ALJ issued a decision unfavorable to Plaintiff on May 21, 2004.  Tr. 11-20.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff had met the disability insured status requirements since October 30, 2002, and Plaintiff had not engaged in substantial gainful activity at any time since October 30, 2002.  Tr. 14-15.  Plaintiff has "severe" impairments, including dysthymic disorder, a history of alcohol abuse, and borderline intellectual functioning. Tr. 15.  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 18.

The ALJ found that Plaintiff retained the RFC to obtain, perform, and maintain the full range of work activity, limited to jobs that have a reasoning development level of one, two, or three (as defined in the *Dictionary of Occupational Titles ("DOT")* and that have no more than superficial contact with the public. He found that Plaintiff has no exertional limitations. Tr. 19. He found that Plaintiff could return to his past relevant work as a pharmacy delivery driver, a construction worker, and a laborer. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 19-20.

Plaintiff submitted a Request for Review of Hearing Decision/Order on July 8, 2004. Tr. 6-10. The Appeals Council issued its opinion on August 5, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 3-6. The ALJ's decision, therefore, became the final decision of the Commissioner.

On October 5, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the

Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because he could return to his past relevant work. Tr.19.

## III.  DISCUSSION

Plaintiff claims that the ALJ erred in finding at step 3 of the sequential analysis that he did not meet the requirements of section 12.05C of the Listing of Impairments. Plaintiff further claims that the ALJ erred at step 4 by failing to include all the mental limitations in the RFC assessment and by failing to make the required legal findings regarding the demands of Plaintiff's past relevant work. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.      Whether the ALJ erred in finding at step 3 that Plaintiff's impairments did not meet or equal in severity Section 12.05C of the Listing of Impairments.**

Plaintiff claims that the evidence of record demonstrates that he has met or equaled the criteria of § 12.05C of the Listing of Impairments.  Section 12.05 of the Listing of Impairments, dealing with mental retardation, defines this impairment as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  This section indicates that presumptive disability under the Listing of Impairments is established "when the requirements in A, B, C, or D are satisfied."  *Id.*  The criteria of Section 12.05C include a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C.  "A claimant must prove both of these conditions in order to meet his burden under step three."  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 110 S. Ct. 885, 891-92 (1990)).  "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination."  *Id.* (citing 20 C.F.R. § 404.1526(a)).

Plaintiff claims that he has met the requirements of Section 12.05C of the Listing of Impairments, having shown a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C.  Plaintiff notes that the ALJ found that intelligence testing revealed a verbal IQ of 67, a performance IQ of 72, and a full scale IQ of 66.  Tr. 17.  Plaintiff claims that his dysthymic disorder constitutes an additional mental impairment and that a diagnosis of "mental retardation" is not required under § 12.05.

Section 12.00(A) describes the structure for evaluation of mental impairments under § 12.05 of the Listing Impairments:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A).  Section 12.05 clearly provides that in order to meet the Listing criteria for mental retardation, a claimant's mental impairment must first satisfy the diagnostic criteria – that is, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05.

Plaintiff claims that the introduction to the listing does not require a diagnosis of mental retardation.[1]  Assuming, *arguendo,* that Plaintiff's assertion is correct, the court notes that Plaintiff is still required to meet the criteria described in the introductory paragraph.  Plaintiff claims that the required criteria for 12.05C are met when the requirements in A, B, C, or D are satisfied – and further claims that "the very clear language of the regulations indicate that the listing 'is met' if the elements in one of the four sub-paragraphs are met."  Pl. Brief at 11.  Plaintiff agrees, however, that mental deficits must manifest prior to age 22.  He claims that mental retardation is defined under the regulations as "a lifelong condition," citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(B)(4).

---

[1]      Plaintiff relies upon the Eighth Circuit's reasoning in *Maresh v. Barnhart*, arguing that the court held that 12.05C does not require a formal diagnosis of mental retardation.  *See Maresh v. Barnhart*, 431 F.3d 1073, 1075 (8th Cir. 2005).  The court does not find *Maresh* particularly instructive in this case, as the Commissioner in *Maresh* did not contest that the claimant met the first requirement of § 12.05, but focused on the second and third requirements.  *Id.* However, solely for the purpose of considering this matter, the court accepts that a formal diagnosis of mental retardation is not necessary.  Accepting Plaintiff's contention is, however, not dispositive of Plaintiff's step 3 arguments, for reasons noted below.

He claims that this definition creates a rebuttable presumption that an IQ score for an adult accurately reflects an individual's IQ throughout that person's entire life and, therefore, demonstrates onset prior to age 22. Plaintiff further points to his special education history and results of academic testing. Plaintiff claims that the presumption, combined with the test results and educational history, "clearly suggest that Mr. Long's mental deficits did manifest prior to age 22." Pl. Brief at 13.

Plaintiff points to *Hodges v. Barnhart*, in which the Eleventh Circuit noted that absent evidence of a change in intellectual functioning, a person's IQ is presumed to remain stable over time. *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001); *see also Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (in which the Eighth Circuit noted that absent evidence of a change in intellectual functioning, a person's IQ is presumed to remain stable over time). However, the presumption that Plaintiff's IQ has remained stable is insufficient to demonstrate that Plaintiff has met the criteria of Listing 12.05. Intelligence tests play an important role in verifying mental retardation but are not the sole measure.

The Commissioner's *Programs Operations Manual System ("POMS")*,[2] describes the relationship of adaptive behavior to IQ scores. *See POMS* § DI 24515.056(D)(2). This section notes:

> The term "adaptive behavior" refers to the individual's progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include childhood development milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements. The judgment of an MC [medical consultant] is necessary to affirm that adaptive behavior is consistent with IQ test results.

*POMS* § DI 24515.056(D)(2)

---

[2]      The POMS may be found at the Social Security Administration Policy Information Site, located at : http://policy.ssa.gov/poms.nsf/partlist!OpenView.

Section 12.00(D)(6) further describes the role that intelligence tests play in evaluating mental retardation for a determination of presumptive disability, noting that "[t]he results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning.  However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6)(a).  Thus, Plaintiff's IQ scores alone do not demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Plaintiff's IQ scores form a part of the data necessary to verify the presence of mental retardation but function as "only part of the overall assessment."  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6).  The Eighth Circuit found, for example, that an ALJ may reject IQ scores that are based on a one time examination by a non-treating psychologist.  *See Clark v. Apfel,* 141 F.3d 1253, 1255 (8th Cir. 1998) ( finding that the ALJ properly rejected IQ scores that were the product of one meeting with a non-treating psychologist and were inconsistent with claimant's daily activities, and no medical records indicated that she was mentally retarded prior to age 22); *see also, Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

The record demonstrates that the psychological consultative examiner ("CE"), Dr. William A. Montgomery, opined that during testing Plaintiff "seemed to put forth a fair effort" and indicated his belief that the test results "provide a reliable and valid estimate of his current level of intellectual functioning."  Tr. 180.  Dr. Montgomery noted that the testing results indicated a verbal IQ of 67, a performance IQ of 72, and a full scale IQ of 66, with a 95% confidence interval of 63-71. Tr. 181.  He noted that Plaintiff's full scale IQ of 66 placed him "in the Mild range of mental

retardation." *Id*. He indicated that diagnosis was deferred on Axis[3] II and further indicated consideration of borderline intellectual functioning versus mild mental retardation. Tr. 182. Dr. Montgomery opined that Plaintiff had a Global Assessment of Functioning ("GAF")[4] score of 55[5] on Axis V. *Id*.

Dr. Montgomery also indicated that test results indicated that Plaintiff was "functioning in the mild range of mental retardation" but further opined that "his history and current level of adaptive functioning suggest that he may be functioning as high as the Borderline range of intelligence." Tr. 183. With regard to Plaintiff's functioning at the time of the evaluation, Dr. Montgomery noted Plaintiff's report of living alone in a trailer for a few years, the ability to bathe and dress himself, the ability to prepare all of his meals in addition to eating pizza from his place of employment, performing all of his own household chores (although experiencing some physical difficulty with yard work), doing his own shopping, paying his own bills, working 26-29 hours per week, dealing with money at work (although occasionally coming up short), maintaining a driver's license, and driving on a daily basis. Tr. 181-82. Dr. Montgomery noted Plaintiff's report of special

---

[3]     The axial system of evaluation is used to facilitate comprehensive and systematic evaluation with attention to the various mental disorders; general medical conditions; psychosocial and environmental problems; and level of functioning. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 27. An Axis I diagnosis is used to report all clinical disorders except for personality disorders and mental retardation, which are reported on Axis II. *Id*. at 27-28.

[4]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32. This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[5]     The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g., flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

education services from the sixth grade, as well as graduation from high school in special education. Tr. 182.

Plaintiff incorrectly claims that "[a]bsolutely nothing in Dr. Montgomery's report indicated the opinion that Mr. Long was in the range of borderline intellectual functioning rather than mild mental retardation." Pl. Brief at 15. Dr. Montgomery specifically noted that Plaintiff's current level of functioning may be as high as the borderline range. While Plaintiff's IQ test results might indicate mild mental retardation, the ALJ appropriately considered Dr. Montgomery's opinion as a whole, which discussed Plaintiff's level of functioning, as well as, and as relates to, the test results. Plaintiff claims that Dr. Montgomery's opinion constitutes a diagnosis of mental retardation. However, Dr. Montgomery expressly deferred a diagnosis on Axis II, noting consideration of mild mental retardation versus borderline intellectual functioning. The DSM-IV notes that "[w]hen there is insufficient information to make any diagnostic judgment about an Axis II diagnosis, this should be noted as Diagnosis Deferred on Axis II."[6] The DSM-IV highlights the importance of deficits in adaptive functioning, noting that "[i]mpairments in adaptive functioning, rather than low IQ, are usually presenting symptoms in individuals with Mental Retardation."[7] The DSM-IV also indicates that "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."[8]

While evaluation of the consistency of IQ scores and adaptive behavior is an issue for an MC, the ALJ may properly consider the opinions of such consultants with the claimant's activities and work history. *Compare POMS*, § DI 24515.056(D)(2) with *Higgins v. Barnhart*, 288 F.Supp.2d

---

[6]    *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 743.

[7]    *Id*. at 42.

[8]    *Id.*

811, 819 (S.D. Tex. 2002) (citing *Villa v. Sullivan*, 895 F.23 1019, 1024 (5th Cir. 1990)) (finding that the claimant's ability to work as a housekeeper, despite her mental limitations, constituted additional *indicia* militating against a finding that her adaptive functioning was deficient to a degree that would be reasonably considered disabling).  The *POMS* provides that "Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment.  The criteria for this paragraph are such that a medical equivalence determination would very rarely be required."  *POMS* § DI 24515.056(D)(1)(c).  In any case, § 12.00(D)(6) indicates that the ALJ should consider the narrative report that accompanies the test results, which should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6).  The ALJ, in his opinion, specifically discussed these very issues, finding that, given Plaintiff's adaptive functioning, his intelligence falls in the borderline rather than the mild mental retardation range.  Tr. 19.  This is consistent with Dr. Montgomery's decision to defer a diagnosis of mild mental retardation versus borderline intellectual functioning and his indication that Plaintiff's level of adaptive functioning may be as high as the borderline intellectual functioning level.  Clearly, the ALJ appropriately considered Plaintiff's reports of his own activities to Dr. Montgomery, along with Dr. Montgomery's objective findings, and his expanded opinion as set forth in the narrative report.  The Eighth Circuit found, for example, that an ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one-time examination by a non-treating psychologist.  *See Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005); *Clark*, 141 F.3d at 1255 (finding that the ALJ properly rejected IQ scores that were the product of one meeting with a non-treating psychologist and were inconsistent with claimant's daily activities, and no medical records indicated that she was mentally retarded prior to age 22); *see also, Muse,* 925 at 790; *Popp*, 779 F.2d at 1499.  In this case the ALJ did not reject the Plaintiff's IQ

-11-

scores, nor did he find that such scores were invalid.  Rather, he considered Dr. Montgomery's deferred diagnosis and the information in the narrative report in finding that Plaintiff was functioning at the borderline intellectual level rather than at the level of mental retardation described in Section 12.05C of the Listing of Impairments.

As noted above, Plaintiff must prove that he meets the criteria of § 12.05C of the Listing of Impairments in order to meet his burden under step three.  *Selders*, 914 F.2d at 619 (citing *Sullivan*, 493 U.S. at 521).  He must provide medical findings that support each of the criteria for the equivalent impairment determination.  *Id.*  He must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05.  The record demonstrates that testing indicated an IQ of 60 through 70 and a "severe" mental impairment – dysthymic disorder.  However, the record also fails to demonstrate that Plaintiff manifested deficits in adaptive functioning during the developmental period.  The record demonstrates that the psychological examiner deferred a diagnosis on Axis II, indicating that mental retardation versus borderline intellectual functioning should be considered and also indicated that Plaintiff may function as high as the borderline intellectual functioning level.  There was substantial evidence in the record to support the ALJ's finding on that issue.  I find that the ALJ did not err in making his step 3 finding and in finding that Plaintiff did not demonstrate presumptive disability by meeting the criteria of Section 12.05C of the Listing of Impairments.

**B.     Whether the ALJ erred at step 4 in making his RFC determination by failing to make findings of the mental demands of Plaintiff's past work, by failing to obtain vocational expert testimony, and by failing to specify which portions of the *Dictionary of Occupational Titles* he relied upon.**

Plaintiff claims that the ALJ erred in several respects in his step 4 determination: First, the RFC finding fails to incorporate all of the limitations imposed by his mental impairments; second,

the ALJ failed to make necessary findings of the mental demands imposed by Plaintiff's past relevant work; and third, the ALJ failed to carry his burden at step 4 by obtaining the testimony of a vocational expert ("VE") or by specifying those portions of the *DOT* that he relied upon in finding that Plaintiff retained the RFC to perform his past relevant work.

Plaintiff notes that the ALJ found that Plaintiff retained the capacity to perform jobs requiring a reasoning ability of level 3 or below.  He claims that the ALJ "cites no authority for this conclusion" and further claims that it is contrary to the medical evidence.  He also claims that there is no substantial evidence in the record to support the ALJ's finding.  Plaintiff notes that testing indicated that he has a second-grade reading level and the state agency medical consultants ("SAMCs") opined that he has a moderate limitation in the ability to perform detailed tasks, as well as moderate limitations in the ability to perform at a constant pace, to complete a workday, and to interact with the public or with others in a socially appropriate manner.

The record demonstrates that the ALJ noted Plaintiff's history of special education, his IQ test results, and the results of academic testing, indicating that he read at a second-grade level, spelled at a third-grade level, and performed mathematics at a fourth-grade level.  Tr. 17.  He also noted Dr. Montgomery's diagnosis of dysthymic disorder and his deferral of a diagnosis on Axis II. *Id.*  The ALJ found that Plaintiff's mental impairments have not restricted his activities of daily living; have created moderate deficiencies of concentration, persistence, or pace; have created moderate difficulties in maintaining social functioning; and have not resulted in episodes of decompensation.  *Id.*  The ALJ also noted Plaintiff's testimony that he is a slow learner with a history of special education classes; that his employer has asked him to work faster; that he cannot understand some things he reads; that he can read a ticket but not a book; and that he did not have to read to perform the delivery jobs (he just looked at map and knew where to go).  Tr. 18.  The ALJ

found that Plaintiff's mental impairments caused some functional loss.  Tr. 19.  The ALJ also noted that he must consider the opinions of the SAMCs.  Tr. 15.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  Social Security Ruling 96-5p (July 2, 1996)("SSR 96-5p").  The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.   Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p")(emphasis in original).  The ALJ is responsible for determining a claimant's RFC.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record.  SSR 96-8p.

The ALJ ultimately found that Plaintiff retained the RFC to perform the full range of work, limited to jobs with a reasoning development level of one, two, or three as defined in the *DOT* and jobs that allow no more than superficial contact with the public.  Tr. 19.  He also found that Plaintiff's past relevant work as a pharmacy delivery driver, construction worker, and laborer did not require the performance of work-related activities precluded by the limitations noted in the RFC finding.  *Id.*

Plaintiff claims that the ALJ effectively rejected the medical opinions of the SAMCs and that he substituted his own opinion for medical and VE opinion as to whether Plaintiff could "perform R3 work with no other limitations."  Pl. Brief at 18.

Pursuant to Social Security Ruling 96-6p (July 2, 1996)("SSR 96-6p"), the findings of fact made by SAMCs regarding the nature and severity of an individual's impairment "must be treated as expert opinion evidence of nonexamining sources" by the ALJ.  SSR 96-6p.  The ALJ is "not

-14-

bound by findings made by state agency or other program physicians and psychologists, but [he] may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* However, the opinions of SAMCs "can be given weight only insofar as they are supported by evidence in the case record." *Id.* Moreover, the ALJ is not bound by the findings of the SAMCs as to whether an individual's impairment is equivalent in severity to any impairment in the Listing of Impairments. *Id.*

The record demonstrates that SAMCs did opine that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, or maintain attention and concentration for extended periods; in the ability to complete a normal workweek, interact appropriately with the general public, or get along with co-workers or peers; and in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 150-51. These summary conclusions were indicated by checkmark, and a detailed explanation of the degree of limitation in each category was recorded in the following section. Tr. 150-52. The SAMCs elaborated on the summary conclusions, explaining such conclusions in narrative form. Tr. 152. The SAMCs indicated that Plaintiff "is able to carry out work-related activity that does not require good social judgment; that Plaintiff "should not be required to work in settings in which the claimant is responsible for the care of others (children, the elderly)"; and, specifically, that Plaintiff is "able to respond to ordinary change in work settings, make reasonable decisions about personal safety[,] and [is] able to interact appropriately with supervisors and co-workers." *Id.*

In his opinion the ALJ did not explicitly or implicitly reject the opinions of the SAMCs. He found that Plaintiff retained the RFC to perform jobs requiring a reasoning ability level of 3 or below. The SAMCs opined that Plaintiff was able to carry out work-related tasks which did not require good social judgment. Tr. 152. Plaintiff notes that the *DOT* defines level 3 reasoning ability

-15-

as including the ability to "apply 'commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form'" and that level 2 reasoning requires the ability to "'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'"  Pl. Brief at 17.  The SAMCs' full opinion, beyond the summary conclusions indicated by checkmark, does not specifically indicate that Plaintiff cannot perform work activities consistent with the RFC to perform jobs requiring a reasoning ability level of 3 or below.

The record further demonstrates that Plaintiff reported to the psychological CE that he quit his previous job for the San Angelo street department because of leg pain.  Tr. 182.  He testified that he does not work more because his legs will not let him stand that long on his feet; more work hours were available, but he cannot take more work because of his legs.  Tr. 210.  He also testified that he had quit other jobs because his windshield was broken and because he had hurt his back.  Tr. 213. While Plaintiff alleges that the ALJ failed to incorporate all of the limitations imposed by his mental impairments into the RFC determination, the record does not contain substantial evidence indicating that he was further limited.  The ALJ's RFC finding is not inconsistent with the findings of the SAMCs, nor is it inconsistent with Plaintiff's testimony that he was primarily limited by his leg pain.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."  *Muse*, 925 F.2d at 790 (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse*, 925 F.2d at 790.  The ALJ did not err by failing to incorporate all

-16-

of the limitations imposed by Plaintiff's mental impairment into the RFC finding, nor did he err by failing to give appropriate weight to the opinions of the SAMCs.

Next, Plaintiff claims that the ALJ erred by taking no vocational testimony, by making no findings with regard to the functional demands of Plaintiff's past work that were implicated by his impairments, and by not performing the function-by-function analysis directed by Social Security Ruling 82-62 ("SSR 82-62)(April 20, 1980). Whether a VE will be called in a particular case is in the ALJ's discretion. *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983). "Vocational testimony is not necessary if the administrative law judge concludes that a claimant could return to his former occupation." *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979). When an ALJ finds that a claimant is capable of performing his past relevant work, the lack of expert testimony becomes irrelevant. *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989). Since the ALJ found in this case that Plaintiff could perform his past relevant work, the ALJ did not err by failing to call a VE.

SSR 82-62 provides that the ALJ should make "[a] finding of fact as to the physical and mental demands of the past job/occupation" of the clamant. Plaintiff claims that the ALJ erred by failing to make such required findings as to the functional demands of Plaintiff's past work that were implicated by Plaintiff's impairments and by failing to perform the analysis directed by SSR 82-62. The ALJ referred to and relied on the function-by-function assessments made by SAMCs regarding Plaintiff's exertional limitations in determining Plaintiff's RFC. Tr. 17, 19. Such reliance has been approved by the Fifth Circuit in lieu of requiring an ALJ to engage in an explicit function-by-function analysis in his decision. *Onishea v. Barnhart*, 116 Fed. Appx. 1, 2004 WL 1588294 (5th Cir. July 16, 2004).

Even assuming that the ALJ failed to appropriately determine the mental and physical demands of Plaintiff's past relevant work, thereby violating SSR 82-62, remand is not necessarily required. Social Security Rulings are agency rulings "published under the authority of the

Commissioner of Social Security and are binding on all components of the Administration." 20

C.F.R. § 422.408 (1980); *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Hall v. Schweiker*, 660

F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(*per curiam*). An agency must follow its own procedures,

even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209

F.3d at 459. Should the agency violate its internal rules and prejudice results, the proceedings are

tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119. However, rulings lack force of

law and are not binding on courts. *Id.* Thus, the ALJ's violation of SSR 82-62 does not ipso facto

mean that the Commissioner's decision must be reversed; rather, the claimant must demonstrate that

he was prejudiced by the error. *Id.* The appropriate question is thus whether such failure is

prejudicial.

The Eastern District of Texas has recognized that while the failure of an ALJ to make

explicit findings as to the physical and mental demands of the claimant's prior work might constitute

error, such error is not necessarily prejudicial. *See Parker v. Barnhart*, 2006 U.S. Dist. LEXIS

64071 (E.D. Tex. March 30, 2006) (adopted by the United States District Court in *Parker v.

Barnhart*, 2006 U.S. Dist. LEXIS 64063 (E.D. Tex. April 19, 2006)). In this case Plaintiff claims

that it was his leg pain which prevented him from performing his past work. There is no evidence

in the record demonstrating that Plaintiff's limitation to work at the R3 level, or lower, precluded

him from performing his past work. Indeed, Plaintiff testified that he did not need to read to deliver

for the pharmacy, and when delivering pizzas, he "just knew the streets." Tr. 234. He testified that

he could read a ticket, in order to keep his deliveries straight, but could not read a book and know

what was going on. Tr. 234-35. The court is unable to find that any error by the ALJ with regard

to making a function-by-function determination of the demands of Plaintiff's past work was

prejudicial, thus requiring remand.

I find that the ALJ did not err at step 4 of the sequential analysis, in making his RFC determination, by failing to obtain VE testimony, by failing to make a functional analysis of the demands of Plaintiff's past work, or by failing to give appropriate weight to the opinions of the SAMCs. I further find that the ALJ's determination that Plaintiff retains the RFC to perform his past relevant work is supported by substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 6th day of February, 2007.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**